UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOMINIKA SURZYN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DIAMOND FOODS, INC., a Delaware limited liability company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No: C 14-0136 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Dkt. 15 |

Plaintiff Dominika Surzyn, individually and on behalf of all others similarly situated, brings the instant putative consumer fraud class action against Defendant Diamond Foods, Inc. She alleges state law claims, inter alia, for unfair competition, false advertising and negligent misrepresentation, based on Defendant's "All Natural" designation on the packaging of certain of its Kettle Brand TIAS! tortilla chips. The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

The parties are presently before the Court on Defendant's Motion to Dismiss and Strike Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f), respectively. Dkt. 15. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to dismiss and DENIES the alternative motion to strike as moot. Plaintiff is granted leave to amend. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

Defendant manufactures and markets Kettle brand TIAS! tortilla chips, including the following varieties which are at issue: All Natural Nacho Cheddar Tortilla Chips, All Natural Zesty Ranch Tortilla Chips, All Natural Salsa Picante Tortilla Chips, All Natural Sweet Baja Barbeque Tortilla Chips and All Natural Chili Con Queso Tortilla Chips (collectively, "Products" or "Chips"). Compl. ¶ 1. The packaging for each variety of the Chips bears the label "All Natural." Id.

According to Plaintiffs, the "All Natural" designation is false, misleading and likely to deceive consumers because the Chips contain maltodextrin and/or dextrose, which are alleged to be "unnatural, synthetic, and/or . . . artificial ingredient[s]." Id. ¶¶ 30, 36. Plaintiff states that she "purchased one or more of the Products during the Class Period, including, but not limited to, a purchase made during 2013 from a Whole Foods market located in Alameda County, California, for the purchase price of approximately $3.00 to $4.00." Id. ¶ 55.

The Complaint alleges five causes of action: (1) violation of the California's False Advertising Law ("FAL"); (2) violation of the fraudulent and unfair prongs of the Unfair Competition Law ("UCL"); (3) violation of the unlawful prong of the UCL; (4) violation of the California Legal Remedies Act ("CLRA"); and (5) negligent misrepresentation. Plaintiff seeks to represent a Class comprised of all California residents who purchased the Chips "from January 9, 2010, through and to the date notice is provided to the Class." Compl. ¶ 56.

Defendant now moves to dismiss or strike all claims of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and (f), and for failure to plead fraud with particularity under Rule 9(b).[1] Defendant also seeks to dismiss or strike Plaintiff's allegations regarding its allegedly deceptive marketing and advertising campaign. The motion is fully briefed and is ripe for adjudication.

---

[1] A dismissal under Rule 9(b) is "functionally equivalent" to one under Rule 12(b)(6). Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007).

## II. LEGAL STANDARD

Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

## III. DISCUSSION

### A. ACTIONABLE MISREPRESENTATION

#### 1. "All Natural"

The first four causes of action are premised on violations of the UCL, FAL and CLRA.  The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The CLRA likewise prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  The FAL makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  Actions brought under these statutes are governed by the "reasonable consumer" test, which focuses on whether "members of the public are likely to be deceived."  Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).  Although reasonableness can, in appropriate circumstances, be decided as a question of law, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."  Id. (citing Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134-35 (2007)).

Defendant first contends that Plaintiff's consumer protection claims must be dismissed on the ground that the pleadings fail to allege a consistent definition of "All Natural."  This argument lacks merit.  Throughout the Complaint, Plaintiff repeatedly and consistently alleges that the Chips are not "All Natural" because they contain "unnatural, synthetic, and/or artificial ingredients."  Compl. ¶¶ 1, 6, 7, 9, 28, 30, 36, 51(h), 57, 58, 60, 64, 72(j), 78, 95, 119, 134, 151; see also id. ¶¶ 37-40 (alleging that maltodextrin and dextrose are created through "enzymatic" processes which are not natural).  Defendant nonetheless asserts that such definition is at odds with the allegations in Paragraph 41 of the Complaint, which state:  "According to Consumers Union, 'Eighty-six percent of consumers expect a "natural" label to mean processed foods do not contain any artificial ingredients.'"  Compl. ¶ 41 (emphasis added).  The Court, however, disagrees that these allegations are contradictory, as "artificial" is synonymous with "synthetic" and/or "unnatural."  In any event, the allegations in Paragraph 41, which are not repeated

elsewhere in the pleadings, are offered merely as background regarding consumer perceptions as to the meaning of "natural" products, and *not* as the operative definition of "All Natural" for purposes of Plaintiff's claims.

Next, Defendant urges the Court to follow Pelayo v. Nestle, No. 13-5213 JFW, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013), which it contends dismissed "nearly identical" claims to those at issue here. Mot. at 8. In that case, the plaintiff alleged that the "All Natural" designation on Buitoni-brand packaged pasta products was false and misleading because the products contained ingredients that were unnatural, artificial or synthetic. In rejecting the plaintiff's UCL and CFRA claims, the court cited a report by the Federal Trade Commission ("FTC") in which it purportedly "declined to adopt a definition of 'natural' because 'natural may be used in numerous contexts and may convey different meanings depending on that context.'" Pelayo, 2013 WL 5764644, at *5 (citing 75 Fed. Reg. 63552-01). Based on the FTC's comments, the court concluded that "it is implausible that 'a significant portion of the general consuming public or of targeted consumers" would be deceived or misled by the use of the term 'All Natural' on the Buitoni Pastas." Id.

The Pelayo court's reliance on the FTC's report as a basis to dismiss the action is misplaced. Though not discussed in the court's ruling, the FTC's report relates to the FTC's Guides for the Use of Environmental Marketing Claims ("Guides"), the purpose of which is to "help marketers make truthful and substantiated environmental claims[.]" 75 Fed. Reg. 63552-01, § I (2010). The Guides, first published in 1992, are periodically updated and revised, and the report cited in Pelayo is the FTC's proposed 2010 update. Id. With regard to the meaning of "natural," the FTC chose not to create a specific section in the Guides to define that term. Id. § IV.B.4. The FTC explained that "definitions for terms such as natural must be based on what consumers understand those terms to mean," but that "no commenters provided consumer perception evidence indicating how consumers understand the term 'natural.'" Id. § IV.B.4.b. In the absence of such information, the FTC declined to proffer specific guidance on the meaning of "natural," particularly since consumer perception of the term may vary depending on the context in which it is used. Id.

Nothing in the FTC's analysis either directly or inferentially supports the Pelayo court's conclusion that it is "implausible" that consumers would be misled or confused by the use of "All Natural" on food product packaging. The FTC simply found that the meaning of "natural" is context-specific, and in the absence of contextualized evidence regarding consumer perceptions, it was inappropriate to provide specific guidance on the meaning of that term. Thus, rather than justifying the Pelayo court's dismissal of the action at the pleading stage, the FTC's observations support the conclusion that the question of whether consumers were deceived by an "All Natural" designation must be resolved based on consideration of evidence—and not at the pleading stage. See Williams, 552 F.3d at 939 (reversing the dismissal of UCL and false advertising claims, finding that "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); accord Rojas v. Gen'l Mills, Inc., No. C 12-5099 WHO, 2014 WL 1248017, at *7-8 (N.D. Cal. Mar. 26, 2014) ("100% Natural" and "All Natural" representations on Nature Valley granola bars could mislead a reasonable consumer where the products contained genetically modified organisms, i.e., GMOs); Parker v. J.M. Smucker Co., No. C 13-690 SC, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (plaintiff's allegations that a reasonable consumer would believe that a product labeled as "all natural" contained no bioengineered or chemically altered ingredients "cannot be resolved as a matter of law"); Vicuna v. Alexia Foods, Inc., No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr.27, 2012) (same); Astiana v. Ben & Jerry's Homemade, Inc., Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796, at *5-6 (N.D. Cal. May 26, 2011) (same).

The Court concludes that Pelayo is not persuasive, and declines Defendant's invitation to follow it. See Jou, 2013 WL 6491158, at *8 (stating that Pelayo "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit."); accord Rojas, 2014 WL 1248017, at *6.

### 2. Other Packaging Information

Defendant next argues that "All Natural" cannot be deemed false, misleading or deceptive when considered in context with other information provided on the packaging. Mot. at 9-10. In particular, Defendant points to (1) the ingredient panel on each of the Chips which lists maltodextrin and/or dextrose as ingredients, and (2) the "Our Natural Promise" statement set forth on the backside of the packaging. The "Our Natural Promise" panel reads as follows:

> OUR NATURAL PROMISE
> - 0 grams trans fat
> - Only all natural colors and flavors
> - Only natural oils
> - No preservatives
> - Non-GMO ingredients
> - Real food ingredients

Def.'s Request for Judicial Not. Ex. A, Dkt. 16. Defendant contends that the ingredient list and "Our Natural Promise" statement clarify any ambiguity created by the "All Natural" designation. Mot. at 10.[2]

The Ninth Circuit has rejected the argument that the accurate disclosure of ingredients on product packaging necessarily insulates a food product manufacturer from liability for misleading statements elsewhere on the product packaging:

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed

---

[2] Defendant requests that the Court take judicial notice of a photographic image of a bag of Kettle brand TIAS! All Natural Nacho Cheddar tortilla chips which shows the "Our Natural Promise" statement, along with an excerpt of chips' ingredients. Dkt. 16. Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Plaintiff objects on the basis that a court cannot take judicial notice of an adjudicative fact, i.e., the actual language on each of Chips' packaging. The Court agrees that it is improper to take judicial notice of the photographic image of one variety of TIAS! All Natural tortilla chips to establish what specific information is contained on each of the five varieties of Chips. In any event, as discussed above, the "Our Natural Promise" statement does not support Defendant's argument for dismissal.

**1**
**2**    information about the product that confirms other representations on the packaging.

**3** Williams, 552 F.3d at 939-40; accord Lam v. Gen. Mills, Inc., 859 F. Supp. 2d 1097, 1105
**4** (N.D. Cal. 2012) ("ingredients list cannot be used to correct the message that reasonable
**5** consumers may take from the rest of the packaging").  Following Williams, numerous
**6** decisions from this District have rejected the argument that Defendant makes here, i.e., that
**7** an "All Natural" representation on the front of the packaging is not deceptive, as a matter of
**8** law, merely because the ingredient panel lists the allegedly non-natural ingredient.  See
**9** Rojas, 2014 WL 1248017, at *7-8 (rejecting defendant's contention that the ingredient list
**10** on the product packaging resolved any possible consumer confusion by identifying which
**11** ingredients in the products are not "100% Natural"); Wilson v. Frito-Lay N. Am., Inc., No.
**12** C 12-1586 SC, 2013 WL 1320468, at *12-*13 (N.D. Cal. Apr. 1, 2013) ("the Court finds
**13** that Plaintiffs have adequately pled that a reasonable consumer could interpret a bag of
**14** chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist
**15** exclusively of natural ingredients, contrary to the reality described in the nutrition box.");
**16** Jou v. Kimberly-Clark Corp., No. C-13-3075 JSC, 2013 WL 6491158, at *8-9 (N.D. Cal.
**17** Dec. 10, 2013) ("Defendant cannot rely on disclosures on the back or side panels of the
**18** packaging to contend that any misrepresentation on the front of the packaging is
**19** excused.").
**20**    In its reply, Defendant argues that the inclusion of the "Our Natural Promise"
**21** statement somehow distinguishes this case from the rule set forth in Williams.  Reply at 6.
**22** It does not.  As noted, the "Our Natural Promise" purports to convey, inter alia, that the
**23** Chips contain "[o]nly all natural colors and flavors" and "[r]eal food ingredients."  RJN Ex.
**24** A.  It is unclear how these representations resolve any ambiguity regarding the meaning of
**25** "All Natural."  If anything, the Our Natural Promise statement serves to further mislead the
**26** consumer—not clarify what is meant by that term.  The Court is thus not persuaded that the
**27** ingredient panel and the Our Natural Promise statement demonstrate, as a matter of law,
**28**

**1**  that no reasonable consumer would likely be deceived by Defendant's characterization of
**2**  the Chips as being "All Natural."

**3**       **B.     PLEADING FRAUD WITH PARTICULARITY**

**4**       The next issue before the Court is whether Plaintiff's claims comport with the
**5**  heightened pleading requirements of Rule 9(b). It is well-settled that fraud claims and
**6**  claims that "sound in fraud" or those that are "grounded in fraud" must pled with
**7**  particularity. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that
**8**  Rule 9(b) applies to UCL claims under the UCL). This rule also applies to claims for
**9**  negligent misrepresentation. Das v. WMC Mortg. Corp., 831 F. Supp. 2d 1147, 1166 (N.D.
**10** Cal. 2011). To plead fraud with particularity, "[the] complaint must 'identify the who,
**11** what, when, where, and how of the misconduct charged, as well as what is false or
**12** misleading about the purportedly fraudulent statement, and why it is false.'" Salameh v.
**13** Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso, U.S. ex rel. v. Gen.
**14** Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

**15**      Defendant contends that the Complaint fails to comport with Rule 9(b) because
**16** Plaintiff has failed to identify (1) which of the five varieties of Chips contains maltodextrin,
**17** dextrose, or both, or (2) which of the Chips she actually purchased. Mot. at 10-11. The
**18** first contention has no merit, as the Complaint expressly identifies which "unnatural
**19** ingredient" (i.e., maltodextrin, dextrose, or both) is contained in each of the five varieties of
**20** Chips. Compl. ¶ l(a)-(e). As for the second contention, however, the Court finds that
**21** Plaintiff's allegations are insufficient. The Complaint does not specify which of the Chips,
**22** if any, Plaintiff purchased, and instead alleges only that "Plaintiff has purchased one or
**23** more of the Products during the Class Period[.]" Id. ¶ 56. This vague allegation is
**24** insufficient. At a minimum, Defendant is entitled to fair notice of the particular product
**25** Plaintiff purchased. See Thomas v. Costco Wholesale Corp., No. C 12-02908 EJD, 2013
**26** WL 1435292, at *9 (N.D. Cal. April 9, 2013) (granting a motion to dismiss where "the
**27** Amended Complaint does not clearly and unambiguously state which particular food
**28**

products were purchased by which particular Plaintiff."). The Court grants Plaintiff leave to amend to cure this deficiency.

### C.   MARKETING AND ADVERTISING ALLEGATIONS

Finally, Defendant moves to dismiss or strike Plaintiff's claims insofar as they are predicated upon its alleged "widespread marketing and advertising campaign[.]" Compl. ¶ 41; see Mot. at 11-12. Defendant contends that the pleadings are devoid of facts that Plaintiff was personally exposed to such a campaign and therefore lacks standing to claim that she was injured by such conduct. See Sevidal v. Target Corp., 189 Cal. App. 4th 905, 928 (2010) (finding that plaintiffs who were not exposed to allegedly false advertisement lacked standing under the UCL).

Plaintiff does not respond to Defendant's argument, except to assert that she has standing to represent consumers who purchased any of the different types of Chips at issue. Opp'n at 10-11. That argument misses the point. Defendant is not taking the position in its motion that Plaintiff lacks standing to represent consumers of other varieties of Chips; rather, its position is that the pleadings fail to allege sufficient facts showing that Plaintiff was in subjected to and harmed by the alleged marketing and advertising campaign.

Given the lack of factual allegations establishing Plaintiff's standing, coupled with Plaintiff's failure to respond to Defendant's arguments on this issue, the Court dismisses Plaintiff's consumer protection claims insofar as they are predicated on Defendant's alleged marketing and advertising campaign. The Court grants Plaintiff leave to amend to cure this deficiency.[3]

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.   Defendant's motion to dismiss is GRANTED. Defendant's alternative motion for a more definite statement is DENIED AS MOOT.

---

[3] Because the Court is dismissing Plaintiffs' putative marketing and advertising campaign claims, Defendant's alternative request to strike is denied as moot.

2. Plaintiff shall have twenty-one (21) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings. Plaintiff is advised that any additional factual allegations set forth in their amended complaint must be made in good faith and consistent with Federal Rule of Civil Procedure 11. To avoid unnecessary motion practice, the parties shall meet and confer *in good faith* regarding the sufficiency of Plaintiff's amended allegations in their forthcoming First Amended Complaint.

IT IS SO ORDERED.

Dated: May 28, 2014

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge